IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEJUAN MCLEMORE, | ) | |
| ID # 1981623, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:17-CV-2132-D (BH) |
| | ) | |
| LORIE DAVIS, Director, | ) | |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I. BACKGROUND

DeJuan McLemore (Petitioner) challenges his conviction for aggravated assault. The respondent is Lorie Davis, Director of the Texas Department of Criminal Justice (TDCJ), Correctional Institutions Division (Respondent).

**A.    Procedural History**

On December 14, 2012, the State of Texas indicted Petitioner for aggravated assault in Cause No. F12-71083. (*See* doc. 15-1 at 6.)[1] He pleaded not guilty and was tried before a jury in the 292nd Judicial District Court of Dallas County, Texas.

On April 11, 2012, Kenneth Eakles (Victim) was in his front yard with two friends, one of whom was working on Victim's truck. Victim briefly went to his backyard. Petitioner, known to the friends as "D-Dub," approached one of them for money owed to him for auto parts to repair a

---

[1] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

car. The friend said he did not have the money "at this moment ... but give me a few minutes," and Petitioner hit him with a pistol. When Victim returned to the front yard, he saw blood coming from the friend's mouth, and he seemed dazed. Victim told Petitioner, whom he did not know, to leave because he did not want fighting in front of his house, and he said he was going inside to call the police. Petitioner said, "I wouldn't do that, old man." As Victim walked away, he heard two gunshots and a third shot hit him in the back. The bullet entered his back and exited near his neck. The friend saw Petitioner shoot the gun one time, and then he heard two more shots. The other friend saw Petitioner shoot the gun three times, and he saw that two shots were fired directly towards Victim's home. The other friend described the gun used as a nine millimeter. A detective testified that the gun used was a .40 caliber. The detective testified that to a lay person, a .40 caliber and a nine millimeter gun would look "pretty similar."

Petitioner got into a Lincoln town car and drove away. Victim testified he could not tell if the car was "burgundy, tan or something." One friend described it as "some sort of burnt orange with a tan colored top ... copper like color sort of," and the other one said it was burgundy. Although there were some discrepancies among the witnesses about the color of the car, Victim and both friend all agreed that Petitioner drove away in a Lincoln after the shooting. Victim went inside his home, and told his son that he had been shot. When the son went outside, both friends said that Petitioner shot Victim. The son looked up the street and saw Petitioner's car driving away. Victim was taken to the hospital, where he underwent surgery.

When police arrived, the friend told officers that Petitioner shot Victim. An officer learned from witnesses that the alleged shooter's first name was Dejuan. "D–Dub" was later confirmed to be Petitioner's nickname.

After receiving information about the suspect, a detective assembled a photo lineup. At that time, he believed that the suspect was another person named Dejuan. Neither of the friends identified the shooter from the first lineup. The detective later talked with Victim's son, who said that Petitioner was the possible suspect. Based on this new information, the detective assembled another photo lineup that included Petitioner. Both friends identified Petitioner the shooter.

On December 4, 2014, the jury convicted Petitioner, and he was sentenced to 23 years' imprisonment. (*See id*. at 50.) The judgment was affirmed on appeal. (*See* doc. 15-13 at 10); *see also McLemore v. State*, No. 05-15-00160-CR, 2015 WL 9591398 (Tex. App. – Dallas Dec. 31, 2015). He was granted an extension until April 1, 2016, to file a petition for discretionary review. *(See* doc. 15-16 at 66); *McLemore v. State*, PD-0100-16 (Tex. Crim. App. Jan. 29, 2016). He did not file a petition for discretionary review. *See McLemore v. State*, PD-0100-16 (Tex. Crim. App. Apr. 27, 2016).

Petitioner's first state habeas application was signed on July 10, 2016, and received by the state court on July 26, 2016. (*See* doc. 15-16 at 5, 22.) It was denied without written order on the findings of the trial court on September 28, 2016. (*See* doc. 15-14); *see Ex parte McLemore*, WR-85,661-01 (Tex. Crim. App. Sept. 28, 2016). Petitioner's second state habeas application was signed on April 21, 2017, and received by the state court on April 27, 2017. (*See* doc. 15-18 at 4, 20.) It was dismissed as a subsequent application under Texas Code of Criminal Procedure article 11.07, § 4 successive on July 12, 2017. (*See* doc. 15-17); *see Ex parte McLemore*, WR-85,661-02 (Tex. Crim. App. July 12, 2017).

**B.**    **Substantive Claims**

Petitioner's federal petition, signed on August 9, 2017, raises the following grounds:

(1)    Trial counsel was ineffective for failing to:

  (a) request a competency hearing;

  (b) effectively cross-examine witnesses;

(2)    The evidence was insufficient to support the conviction.[2]

(*See* docs. 3 at 6-7; 4 at 2-5.)  Respondent filed a response, and Petitioner filed a reply.  (*See* docs. 13, 16.)

## II.  STATUTE OF LIMITATIONS

Respondent contends that the petition is barred by the statute of limitations.  Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because Petitioner filed his petition after its effective date, the Act applies to it.  Title I of the Act substantially changed the way federal courts handle habeas corpus actions.  One of the major changes is a one-year statute of limitations.  See 28 U.S.C. § 2244(d)(1).

## A.    Calculation of One-Year Period

The one-year period is calculated from the latest of either:

  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[2]  Petitioner also contends that he is actually innocent.

4

recognized by the Supreme Court and made retroactively applicable
to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

*See id.* § 2244(d)(1)(A)-(D).

Here, the factual predicate for Petitioner's claims either became known or could have

become known prior to the date his judgment became final.[3]  Respondent argues that because

Petitioner did not file a petition for discretionary review, the judgment became final on January 30,

2016, which was thirty days after the court of appeals issued its opinion.  Petitioner was granted an

extension to April 1, 2016, to file a petition for discretionary review.  Because he did not file a

petition for discretionary review, the time to do so expired on April 1, 2016, and his judgment

became final on that date.  *See Brown v. Thaler*, 455 F. App'x 401, 405 (5th Cir. 2011) (where a

petitioner was granted an extension to file a petition for discretionary review, but did not file a

petition for discretionary review, the judgment became final when the extended time to file a petition

for discretionary review expired).  Petitioner had until April 1, 2017, to file his federal habeas

petition, absent any tolling of the statute of limitations.

**B.**    **Statutory Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

*shall not be counted toward any period of limitation under this subsection*."  28 U.S.C. § 2244(d)(2)

(emphasis added).  Petitioner's first state habeas application was signed and deemed mailed on July

---

[3] He has not alleged a state-created impediment that prevented him from filing his federal petition or any new
constitutional right.

10, 2016, and it was denied on September 28, 2016. *See Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013) (pro se prisoner's state habeas application is constructively filed for purposes of AEDPA when the prisoner delivers the papers to prison authorities for mailing to the district court). The limitations period was tolled for 81 days while the state application was pending, making his federal petition due no later than June 21, 2017. His second state habeas application was signed and deemed filed on April 21, 2017, and it was dismissed on July 12, 2017. The limitations period was tolled an additional 83 days while that habeas application was pending, making the federal petition due no later than September 12, 2017. Petitioner filed his § 2254 petition on August 9, 2017, the date that it was mailed.[4] It is therefore timely.

### III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4] *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed

unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C.

§ 2254(e)(1).

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n

all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for

his defense."  U.S. Const. art. VI.  It guarantees a criminal defendant the effective assistance of

counsel, at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469

U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner

must demonstrate that counsel's performance was deficient and that the deficient performance

prejudiced his or her defense.  *Id.* at 687.  A failure to establish either prong of the *Strickland* test

requires a finding that counsel's performance was constitutionally effective.  *Id*. at 696.  The Court

may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable assistance."

*Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or

substantially influenced by the defendant's own statements or actions."  *Id.* at 691. To establish

prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams*

*v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient

performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).

Reviewing courts must consider the totality of the evidence before the finder of fact in assessing

8

whether the result would likely have been different absent counsel's alleged errors.  *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh.  *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice").  One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations are insufficient to obtain relief under § 2255.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## A.    <u>Competency</u>

Petitioner contends that counsel was ineffective for not requesting a competency hearing, and he provides medical records of which counsel was allegedly aware, and which allegedly show that he was not only diagnosed with depression, as the state court found; he was also diagnosed as bipolar and polysubstance dependent with a history of psychological problems, including confinement in mental institutions and psychotropic drug use.  (*See* docs. 4 at 3, 7-14; 16 at 4.)[5]

Due process requires that a criminal defendant be competent to stand trial before he is prosecuted.  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).  "[T]he Constitution does not permit

---

[5] Respondent asserts that the medical records attached as Exhibit E were not presented to the state habeas court, so they cannot be considered in determining the reasonableness of the state court's disposition of his claim.  (*See* doc. 13 at 22, n.6), In reviewing a state court's adjudication for reasonableness, a federal court is limited to the record that was before the state court.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Even if Exhibit E could be considered, it does not show that the state court's determination was unreasonable.

trial of an individual who lacks 'mental competency.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008). A person lacks mental competency if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

> The state habeas court found that:

> [A]lthough [Petitioner] was previously diagnosed with depression, this alone is insufficient to suggest incompetence or trigger an informal inquiry. [Petitioner] fails to show that, at the time of trial, he suffered any current mental illness of that his past diagnosis affected his abilities to understand the proceedings or consult with counsel. Moreover, he fails to demonstrate that even if counsel or the Court had raised an issue regarding his competency, there is a reasonable probability that a fact-finder would have found him incompetent to stand trial.

(doc. 15-15 at 3-4.)

The fact that a defendant has seen a psychiatrist and taken psychotropic medication does not establish reasonable grounds to believe that a defendant might not be able to understand trial proceedings or assist with his defense. *United States v. Williams*, 998 F.2d 258, 267 (5th Cir. 1993). Counsel is not ineffective for failing to request a competency hearing where there is no evidence that the petitioner was incompetent. *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989). Petitioner has not presented any evidence to show that he was unable to rationally communicate with counsel or understand the proceedings, or that there was a basis for counsel to doubt his competency and move for a competency hearing. He also has not shown that he was incompetent. He has not shown that the state court's rejection of this claim was unreasonable.

## B.    Cross-examination

Petitioner contends that counsel was ineffective for failing to effectively cross-examine witnesses about their criminal histories. (*See* doc. 4 at 3-4.)

### 1.    *Procedural Bar*

Respondent asserts that this claim is procedurally barred.

When a claim was dismissed by a state court pursuant to an independent and adequate state procedural rule, federal habeas review of that claim is barred unless the petitioner can establish either cause for the default as well as actual prejudice as a result of the alleged violation of federal law, or that the failure to consider the claims would result in a fundamental miscarriage of justice, which requires the petitioner to establish that he is actually innocent of the offense. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Roberts v. Thaler*, 681 F.3d 597, 605 (5th Cir. 2012). A claim is procedurally defaulted if the state habeas court explicitly found that the claim could have been, but was not, raised on direct appeal, unless one of the exceptions set forth in *Coleman* has been met. *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006).

Petitioner did not file a petition for discretionary review, and he did not raise this claim in his first state habeas application. (*See* doc. 15-16.) It was raised in his second state habeas application, but that application was dismissed as a subsequent application under Texas Code of Criminal Procedure article 11.07, § 4. (*See* docs. 15-18 at 11; 15-17.) The dismissal as a subsequent application under article 11.07, § 4 is an adequate and independent state procedural ground that bars federal habeas review. *See Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000).

### 2.    *Actual Innocence*

Petitioner seeks to avoid the procedural bar by claiming that he is actually innocent. He does not allege cause and prejudice.

A claim of actual innocence is a gateway to review an otherwise procedurally barred claim.

*See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). The Fifth Circuit does not recognize a freestanding claim of actual innocence. *See In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009). A tenable actual innocence claim must persuade a district court that in light of the new evidence, no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Fratta v. Davis*, 889 F.3d 225, 231 (5th Cir. 2018). A claim of actual innocence must be supported by new reliable evidence, such exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. *Id.* at 232. Evidence that was "always within the reach of [petitioner's] personal knowledge or reasonable investigation" is not new under the actual innocence exception to the procedural bar. *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008). Petitioner has not shown that there was evidence of innocence that was unavailable to him or counsel at or before trial, so he has not shown that the procedural bar for his cross-examination claim should be excused on the basis of actual innocence.

## V.  SUFFICIENCY OF EVIDENCE

Petitioner contends that the evidence was insufficient to support the conviction. Respondent contends that this claim is procedurally barred.

Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir. 1996) (recognizing that this is a long-standing legal principle under Texas law).

Petitioner raised a claim of insufficient evidence on direct appeal, but he did not present it to the Court of Criminal Appeals because he did not file a petition for discretionary review. He

presented the claim on state habeas, and the state habeas court found that a challenge to the sufficiency of the evidence is not cognizable on state habeas. (*See* doc. 15-15 at 4.) Sufficiency of evidence claims are not cognizable on state habeas review. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). Petitioner has procedurally defaulted his claim of insufficiency of the evidence. This default constitutes an adequate and independent state procedural ground to bar federal habeas review of the claim. *See Reed v. Thaler*, 428 F. App'x 453, 454 (5th Cir. 2011) (citing *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004), and *Ex parte Grigsby*, 137 S.W.3d at 674). The claim is therefore procedurally barred unless Petitioner shows cause and prejudice or a fundamental miscarriage of justice, i.e., actual innocence. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000). As discussed, Petitioner has not alleged cause and prejudice, and he has not shown that the procedural bar should be excused on the basis of actual innocence.

## VI.  RECOMMENDATION

This petition for writ of habeas corpus should be **DENIED** with prejudice.

**SIGNED on this 6th day of May, 2019.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14